# Rhodes v. Wetherill, Appellant.

*Principal and agent—Sale of stock of corporation—Production of purchaser—Contract.*

An agreement which contemplates the production of a purchaser for a certain number of shares of stock of a corporation is not complied with by the production of a purchaser who offers to take, not the number of shares designated, but stipulates for the entire amount of the capital stock of the corporation. and offers to make payment therefor not at the time, but within thirty days thereafter, upon the further condition that the result of an examination into the financial affairs of the company shall be satisfactory to the proposed purchaser.

Argued Feb. 7, 1912. Appeal, No. 9, Jan. T., 1912, by defendant from judgment of C. P. Delaware Co., Sept. T., 1908, No. 133, on verdict for plantiff in case of Charles M. Rhodes v. Robert Wetherill. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover compensation for the sale of the stock of a corporation. Before JOHNSON, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,670. Defendant appealed.

*Error assigned* was in refusing to enter judgment for defendant n. o. v.

*O. B. Dickinson,* with him *William B. Harvey* and *Geo. B. Lindsay,* for appellant.

*W. Roger Fronefield,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 15, 1912:

It is difficult to reconcile the verdict of the jury in this case with any theory presented by either side at the trial. Plaintiff claimed to be entitled to the benefit of an agreement made by Charles L. Taylor with the defendant Robert Wetherill, under which the plaintiff in his capacity as a broker, alleged that he was entitled to recover compensation for the sale of 2,833 shares of the capital stock of the Gas Company of West Chester, at the rate of $5.00 per share, amounting in all to the sum of $14,165, and interest thereon. In his statement of claim, the plaintiff sets forth that the defendant was the owner or in control of 2,833 shares of the capital stock of the gas company, and that certain negotiations were had which resulted in an oral agreement with defendant by which there was given to plaintiff the right to make sale of the stock upon the understanding that whatever should be obtained therefor in excess of $35.00 per share should be given to plaintiff as compensation for his services in procuring a purchaser for the stock. It was further alleged that in pursuance of this agreement, plaintiff did procure the Heald-Stevens Company of Michigan as a purchaser for the stock at the price of $40.00 per share, and that he took the president of the said purchasing company to the defendant for the purpose of receiving the shares of stock from the defendant, and paying him therefor. That the said president of the purchasing company tendered to the defendant the sum of $5,000 to bind the bargain, which the defendant refused to accept, and also refused to enter into any agreement with the said company for the sale of the stock.

Upon the other hand, the defendant denied that he ever entered into anything in the way of a contract with the

plaintiff, giving him the right to make sale of the stock to other parties, and he testified at the trial that he had done nothing more in the matter than to state that the price for his stock was $35.00 per share, and that he would not consider an offer of a sum less than that, and would pay no commission. Under these contradictory statements, therefore, plaintiff was entitled to the full amount of his claim, or to nothing whatever. The verdict which was rendered by the jury is not, as to its amount, supported by the averments in the statement of claim, or by anything which appears in the evidence.

An examination of the record and of the proofs submitted at the trial, shows that Charles L. Taylor testified that the defendant refused to take less than $35.00 per share for his stock, but authorized him to sell it at any price which he could obtain above that figure, and retain the difference for himself as compensation. It does not appear that the plaintiff Rhodes knew of this arrangement until after it was made. There was testimony tending to show that Taylor was acting in his behalf. That matter is, perhaps, immaterial in so far as this case is concerned.

It appears clearly that the defendant owned 1,670 shares of the stock. It was testified on behalf of plaintiff, that defendant said that he had an understanding with certain other stockholders that they would act with him in the sale of the stock. The defendant, however, denied having made any such statement, or that there was in fact any such understanding. But it was upon the theory that the defendant could in this way control the delivery of 2,833 shares of the stock that the plaintiff based his claim for commissions to that extent. It will be noted that the subject matter of the alleged contract was the sale of shares of capital stock in a corporation, and not the physical plant of a gas company. Of course, the purchase of the shares carried with it the control of the business; but it was the shares of stock

which were to be the subject of negotiation and sale, rather than the property itself.

Plaintiff's theory, and his story of the transaction was in substance that he had, under the agreement with the defendant, the right to sell the stock, and to retain for himself as compensation for his services, everything that he could obtain for it over and above the sum of $35.00 per share. How, then, did he, according to his own statement, comply with this agreement? According to the evidence, the purchaser which plaintiff produced, went to the defendant, not with an offer to purchase the stock and pay for it at the time, but instead with an agreement which he desired the defendant to sign, by which the defendant was to deliver not merely the 1,670 shares of stock which he owned, but also 1,163 shares belonging to other parties, whose ownership it was supposed he could control, and in addition to that, 167 shares of stock whose ownership was scattered, the whole comprising the entire 3,000 shares of the capital stock of the Gas Company, for which the purchaser was to pay $40.00 per share within thirty days from the date of the execution of the proposed agreement. Even at that, the paper did not amount to a positive agreement to purchase the stock, for it was stipulated that after the signing of the agreement, the proposed purchaser was to be permitted to make an examination of the books and papers and business of the gas company, and the consummation of the agreement was made to depend on the result of that examination. Certainly, such an offer as this cannot be considered an unconditional agreement to purchase. The transaction did not amount to a sale of the stock for cash, and was not a compliance with the terms of the alleged contract, as set forth in plaintiff's statement of claim or in the evidence offered by plaintiff. An agreement which contemplates the production of a purchaser for a certain number of shares of stock of a corporation is not complied with by the production of a purchaser who offers to take, not the number of shares designated,

but stipulates for the entire amount of the capital stock of the corporation, and offers to make payment therefor not at the time, but within thirty days thereafter, upon the further condition that the result of an examination into the financial affairs of the company shall be satisfactory to the proposed purchaser.

We cannot find from the evidence that the plaintiff made out his case, even as he outlined it for himself. He did not show compliance with the agreement which he alleged was made with the defendant. The court below erred in refusing to enter judgment in favor of the defendant non obstante veredicto. The assignments of error are sustained, and the judgment is reversed, and is now entered for the defendant.